Opinion issued December 22, 2011.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-10-00163-CV

———————————

Michel Hamid
and Francis Hamid, Individually and on Behalf of the Estate of Megan Hamid,
Deceased,
Appellants

V.

Lexus, a Division of Toyota Motor Sales, U.S.A., Inc.
and Toyota Motor Corporation,
Appellees



 



 

On Appeal from the 56th District Court

Galveston County, Texas



Trial
Court Case No. 07CV0094



 

OPINION

          In this products liability case,
Michel and Francis Hamid, individually and on behalf of the Estate of Megan
Hamid, appeal a take-nothing judgment in favor of Lexus, a Division of Toyota
Motor Sales, U.S.A., Inc. and Toyota Motor Corporation.  The Hamids contend
that the trial court committed reversible error by including a “no liability”
rebuttable presumption instruction in the jury charge.[1]


We affirm.

Background

          Megan
Hamid died when she lost control of the 2002 Lexus ES300 she was driving.  The accident occurred after 9:00 p.m. on an
unlit section of Interstate 45 South.  A
dark blue vehicle had been abandoned on the left shoulder of the interstate,
extending partially into Megan’s lane of travel.  When Megan steered violently to avoid the
vehicle but failed to apply her brakes, she lost control.  Her vehicle hit the barrier dividing the
interstate, rolled numerous times, and came to rest in the northbound lanes of
travel.  Megan was severely injured and
died the next day. 

          Megan’s
parents sued Lexus and Toyota on the basis that the ES300 was defectively
designed because it was manufactured and sold without a Vehicle Stability
Control device (VSC).  According to their
petition, a VSC (also known as “electronic stability control” or “ESC” device)
is a safety technology that helps drivers maintain or regain control of their
vehicle during emergency steering maneuvers. 
The Hamids claimed that the absence of the device
rendered the ES300 defective and was a producing cause of Megan’s death.  

Lexus and Toyota (collectively
Toyota) denied the allegations and asserted that, because the ES300 complied
with the various mandatory government safety standards applicable to the
vehicle at the time, they were entitled to a jury instruction on the statutory
“presumption of safety” under section 82.008 of the Civil Practice and Remedies
Code.  See Tex. Civ. Prac. & Rem Code Ann. § 82.008 (West 2011).  

At trial, the Hamids
introduced expert testimony that Toyota’s decision not to include a VSC as
standard equipment on the ES300 was a design defect that rendered the vehicle
unreasonably dangerous.  Their experts
also testified that, had the ES300 been equipped with a VSC, Megan would have
survived the accident.  The VSC device
compares the driver input or command with the vehicle’s response.  It “is designed to help the [car] do what the
driver is telling the car to do.” 
Through sensors, the device detects the driver input and the vehicle’s
reaction.  Based on that information, it
then decides whether to take countermeasures to stabilize the vehicle and does
so if the vehicle does not respond appropriately to the driver input.  For instance, the device may engage brake
pressure predominately to one wheel in order to arrest or stop a spinout.  The VSC also “reduce[s] the engine power to
help the vehicle come back more in line with where the driver has commanded it
to go” and can control throttle output. 
The Hamids’ experts testified that the device
constituted a “very substantial improvement to vehicle handling when you are in
an obstacle avoidance maneuver” and was “highly effective” in emergency
avoidance situations and in controlling slips and slides during maneuvering.[2]  

Toyota’s expert witnesses agreed that
a VSC is a safety feature that helps prevent the type of sliding involved in
this accident, i.e. rear wheel sliding. 
They testified that, at the time in question, only two percent of the
vehicles in the United States were equipped with a VSC, which was an “emerging
technology.”  They concluded that it was
unnecessary and the ES300 was a reasonably safe vehicle without it.  They also testified that, even if Megan’s
vehicle had been equipped with a VSC, it would not have prevented this accident
“given the specifics of this crash scenario . . . because there simply wasn’t
enough time for it.”  

During the charge conference, the Hamids objected to the following jury question:

QUESTION NO. 1:

Was there
a design defect in the 2002 Lexus ES300 at the time it left the possession of
Toyota or Lexus?

 

A “design
defect” is a condition of the 2002 Lexus ES300 that renders it unreasonably
dangerous as designed, taking into consideration the utility of the 2002 Lexus
ES300 and the risk involved in its use. 
For a design defect to exist there must have been a safer alternative
design.

 

“Safer
alternative design” means a product design other than the one actually used
that in reasonable probability—

 

(1)
 would have prevented or significantly reduced
the risk of the occurrence in question without substantially impairing the
product’s utility; and

 

(2)
 was economically and
technologically feasible at the time the 2002 Lexus ES300 left the control of
Toyota by the application of existing or reasonably achievable scientific
knowledge.

 

You are entitled to presume that Toyota is not liable
for any injury to the Plaintiffs if the evidence establishes that the 2002
Lexus ES300 complied with mandatory safety standards or regulations adopted and
promulgated by the federal government, or an agency of the federal government,
that were applicable to the 2002 Lexus ES300 at the time of its manufacture and
that governed the product risk that allegedly caused harm.

 

Plaintiffs may rebut the presumption by establishing
that the mandatory federal safety standards or regulations applicable to the
product were inadequate to protect the public from unreasonable risk of injury
or damage.

 

Answer “Yes” or “No.”

 

          This
instruction was based on section 82.008(a) of the Civil Practice and Remedies
Code, which provides a statutory presumption of no liability in certain
circumstances:  

(a) 
 In a products liability action brought against
a product manufacturer or seller, there is a rebuttable presumption that the
product manufacturer or seller is not liable for any injury to a claimant
caused by some aspect of the formulation, labeling, or design of a product if
the product manufacturer or seller establishes that the product’s formula,
labeling, or design complied with mandatory safety standards or regulations
adopted and promulgated by the federal government, or an agency of the federal
government, that were applicable to the product at the time of manufacture and
that governed the product risk that allegedly caused harm.

 

Tex. Civ. Prac.
& Rem. Code Ann. § 82.008(a).  

The Hamids
objected to this question on the basis that the defendants were not entitled to
the section 82.008(a) presumption because there were no Federal Motor Vehicle
Safety Standards (FMVSSs) that applied to a VSC.  They submitted their own question that did
not include the presumption instruction.  The trial court overruled the objection and
denied the Hamids’ proposed question.  

The jury answered “no” to Question
No. 1, and the trial court entered a take-nothing judgment against the Hamids.  The Hamids appealed.  

Standards for Reviewing Charge Error

The trial court “shall submit the
questions, instructions and definitions in the form provided by Rule 277, which
are raised by the written pleadings and the evidence.”  Tex.
R. Civ. P. 278.  Whether the
charge submits the controlling issue in the case, in terms of theories of
recovery or defense, is a question of law which is reviewed de novo.  Braudrick v. Walmart
Stores, Inc., 250 S.W.3d 471, 475 (Tex. App.—El Paso 2008, no pet.).  

The decision of whether to submit a
particular instruction is reviewed for an abuse of discretion.  Shupe v. Lingafelter,
192 S.W.3d 577, 579 (Tex. 2006).  A
trial court abuses its discretion if it acts in an arbitrary or unreasonable
manner without reference to any guiding rules or principles.  Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003).  The essential inquiry is whether the
instruction or definition aids the jury in answering the questions.  Lee v. Lee, 47 S.W.3d 767, 789 (Tex. App.—Houston [14th Dist.] 2001,
pet. denied); see also Sterling Trust Co. v. Adderley, 168 S.W.3d 835, 842-43 (Tex. 2005).  A court is given wide latitude to determine
the sufficiency of explanatory instructions and definitions.  Plainsman Trading Co. v. Crews, 898 S.W.2d 786, 791 (Tex. 1995).  

An instruction is proper if it
assists the jury, is supported by the pleadings or evidence, and accurately
states the law.  Union Pac. R.R. Co. v. Williams, 85
S.W.3d 162, 166 (Tex. 2002).   A
jury instruction is improper if it comments on the weight of the evidence or
“nudge[s]” or “tilt[s]” the jury.  Wal-Mart Stores, Inc. v. Johnson, 106
S.W.3d 718, 724 (Tex. 2003); see Torres
v. Caterpillar, Inc., 928 S.W.2d 233, 241 (Tex. App.—San Antonio 1996, writ
denied).  It can be error for a trial
court to give the jury an instruction even when it is a substantially correct
statement of the law.  Liberty Mut. Ins. Co. v. Camacho, 228 S.W.3d 453,
460 (Tex. App.—Beaumont 2007, pet. denied).

Preservation of Charge
Error

To preserve charge
error for review, a party must “point out distinctly the objectionable matter
and the grounds of the objection.” Tex. R.
Civ. P. 274.  “Any complaint as to
a question, definition, or instruction, on account of any defect, omission, or
fault in pleading, is waived unless specifically included in the objections.”  Id.  An objection does not satisfy rule 274 unless
“the defect relied upon by the objecting party and the grounds of the objection
are stated specifically enough to support the conclusion that [the] trial court
was fully cognizant of the ground of complaint and deliberately chose to
overrule it.” Carousel’s Creamery, L.L.C. v. Marble Slab Creamery, Inc., 134 S.W.3d 385, 404 (Tex.
App.—Houston [1st Dist.] 2004, pet. dism’d).  A party must “clearly designate the alleged
error and specifically explain the basis of its complaint in its objection to
the charge.” Id. at 404–05; see
also C.M. Asfahl Agency v. Tensor, Inc., 135 S.W.3d 768, 793 (Tex.
App.—Houston [1st Dist.] 2004, no pet.) (“To be sufficiently specific, the
party’s objection must identify the claimed error and explain the basis of the
party’s complaint.”).  If a party fails to lodge an objection to the jury charge that
timely and plainly makes the trial court aware of the complaint, error is not
preserved and the complaint is waived. Ford Motor Co. v. Ledesma, 242 S.W.3d 32,
43 (Tex. 2007); State Dep’t of Highway
& Pub. Transp.
v. Payne, 838 S.W.2d 241 (Tex. 1992) (op. on reh’g). 
On appeal, the charge error complained of must comport with the objections made at the charge
conference.  Cont’l
Cas. Co.
v. Baker, No. 01-09-00881-CV, 2011 WL 3918155,
at *7 (Tex. App.—Houston [1st Dist.] Aug. 25,
2011, no. pet. h.); Wackenhut Corrections Corp. v. De La Rosa, 305 S.W.3d 594, 616 (Tex. App.—Corpus
Christi 2009, no pet.). 

The Hamids’ objection to the rebuttable
presumption instruction was composed of these three sentences, only one of
which was substantive:  

Mr.
Griffith: We object to Question no. [1].  We don’t think they’re entitled to the
presumption in this case because there is no Federal Motor Vehicle safety
standard that applies to the VSC.  So
they don’t get the presumption. 

 

In reliance on this single objection, the Hamids
make three arguments for reversal of the trial court’s judgment:  (1) the statutory presumption does not apply
when no federal safety standard or regulation exists that “relates to the
defect that has been alleged by a plaintiff,” i.e., the lack of a VSC;  (2) Toyota was not entitled to the
instruction because the mandatory federal safety standards and regulations
relied upon by Toyota “do not govern the product risk that caused [Megan’s]
fatal injuries:  loss of vehicle control
due to rear-wheel spinout caused, in turn, by the lack of [ESV/VSC]”; and (3)
legislative history and “existing legal precedent” reveal that the rebuttable
presumption was never intended to be submitted as a jury instruction and that
it should disappear if contrary evidence is introduced.  At best, the Hamids’
charge objection preserved only the first of these three arguments.  The other two arguments are not encompassed
by the objection made to the trial court and therefore were not preserved. 

Regarding their second challenge to the jury charge, we hold
that the Hamids’ objection did not plainly advise the
trial court that they were objecting because the federal safety standards and
regulations that were admitted during trial did not govern the risk in
question, nor was this argument apparent from the context of their
objection.  Under the charge, Toyota was
entitled to a presumption if it complied with standards “that governed the
product risk that allegedly caused harm.” 
During the charge conference, the Hamids did
not identify the risk in question, discuss the
evidence regarding the mandatory federal standards that were admitted, or
identify the risks addressed by those standards.[3]  Indeed, they did not even mention the word
“risk.”  The Hamids’
objection was not focused on the admitted standards.  Rather their argument was focused on the VSC
itself.  Thus, the Hamids’
first argument—which was preserved—addresses the lack of a particular safety
device and resulting defect, whereas their second argument—which was not
preserved—addresses the lack of relevance of the standards that were admitted
because they do not address the risks in question.  By separating these two arguments in their
brief, the Hamids implicitly acknowledge that they
are not the same.

During the trial, it was undisputed
that the ES300 complied with all applicable federal standards.  In particular, Toyota demonstrated that the
ES300 complied with the two applicable FMVSSs, namely FMVSSs 105 and 135, that govern
safe braking performance and stopping distances.[4]  See
49 C.F.R. §§ 571.105; 571.135.  The Hamids did not object to the relevance of this evidence or contend
that Toyota had not satisfied its burden to demonstrate that these standards
governed the product risk in question.  Although
the Hamids presented expert testimony that there were
no mandatory federal standards that related to or required a vehicle to include
a VSC, their design expert, Mark Arndt, did not specifically address why the
federal standards relied upon by Toyota did not apply to the Hamids’ design theory. 
Thus, neither at trial nor during the charge conference did the Hamids notify the trial court that Toyota had not satisfied
its burden of demonstrating that the federal regulations governed the risk in
question.  Similarly, the Hamids’ argument on appeal that these two standards
constitute performance, not design standards, and that the rebuttable
presumption only applies to design standards, was also not made during the
charge conference.  Because the trial
court did not have an opportunity to address these objections, they were not
preserved. Cf. Payne, 838 S.W.2d at 241; see
Faust v. BNSF Ry. Co., 337
S.W.3d 325, 330–31 (Tex. App.—Fort Worth 2011, pet. filed).  

Regarding their third challenge, and unlike their briefing on
appeal, there was no discussion during the charge conference of allocating
burdens of proof or production versus burdens of persuasion.  Neither was there any contention about
legislative history or case law on the use of presumption instructions
generally.  Instead, the Hamids’ objection was directed at the use of the
presumption instruction in this case based on the evidence.  Therefore, this third challenge is also
waived. 

Accordingly, we turn to the only challenge that was preserved
and consider whether the trial court erred in submitting the rebuttable presumption instruction
because there was no federal safety standard or regulation that “relates to the
defect that [was] alleged by [the Hamids].”

Rebuttable Presumption
Instruction

          Under
section 82.008(a) of the Texas Civil Practice & Remedies Code, a defendant
manufacturer or seller in a product liability action is entitled to a statutory
presumption of no liability only if the defendant establishes that the
product’s design complied with federal safety standards and regulations that
“governed the product risk that allegedly caused the harm.”  Tex.
Civ. Prac. & Rem. Code Ann. § 82.008(a).

The Hamids
argue that Toyota was not entitled to a rebuttable presumption instruction
because the legislative intent of section 82.008 demonstrates that the
presumption only applies when there is a standard that “relate[s] specifically
to the defect that has been alleged by a plaintiff.”  Specifically, the Hamids
contend that the determination of whether to submit the rebuttable presumption
instruction is dependent upon whether the plaintiff’s petition alleged a
product defect covered by a federal
safety standard or regulation.  Citing to
a statement included in the House and Senate reports, the Hamids
contend that the presumption does not apply when a manufacturer complies “with
all federal standards that exist for a product but no standard exists that
related specially to the defect that has been alleged
by a plaintiff.”  

Based on the plain and unambiguous
language of the statute, we reject this contention and hold that the
presumption’s applicability is based on the relevant product risk, not the
particular alternative design alleged by the plaintiff.  See Wright
v. Ford Motor Co., 508 F.3d 263 (5th Cir.
2007).  In Wright, a three-year-old boy was killed when a Ford Expedition
backed over him.  The boy’s parents sued,
alleging that the vehicle had a dangerous blind spot, that it was not equipped
with any of the “viable and economically feasible safety devices, including
back-up alarms,” and that Ford’s failure to include such reverse-sensing
systems as mandatory standard equipment was a design defect.   Id. at 268.  

Ford defended on the ground that it
had complied with FMVSS 111, which concerned rearview mirror performance
placement “in order to protect the public from backing into deaths and injuries
due to limited rearview vision,” and thus was entitled to the “no liability”
presumption of section 82.008.  Id. at 269. The
trial court agreed and included an instruction based on section 82.008 in the
jury charge.  Id.  The jury answered “no”
to the design defect question, and the Wrights appealed.  

          The Wrights
argued that FMVSS 111 did not govern the rear sensing system with which they
contended the Expedition should have been equipped, making the inclusion of an
82.008 jury instruction error.  Id.  More
specifically, they argued, based on statements in the legislative history, that
the question is “whether the particular defect
claimed was governed by the federal safety standard and not the risk arising
from that defect.”  Id. at 270 (emphasis in original).  The court held that the statute clearly
addresses risk, not the particular safety device the plaintiffs alleged should
be utilized.  Id.  Additionally, because
the legislative history was not clear that the legislators distinguished
between defect and risk, it was particularly unnecessary to review legislative
history when the legislative history does not necessarily conflict with the
plain reading of the statute.  Id. at 270 n. 5.
We agree with Wright that a plain
reading of the statute addresses risks, not a particular product device that
the plaintiff contends should be altered.

          Our conclusion
is also supported by the legislature’s focus on “risk” in that section of
Chapter 82 specifically addressing the definition of a product defect, i.e.,
section 82.005.  See Tex. Civ. Prac. & Rem. Code Ann. § 82.005 (West
2011).  In that section, the legislature
statutorily defined the word “defect” in design defect claim to include two
elements:  “a safer alternative design”
and causation.  See id. § 82.005(a).[5]  An alternative design is “safer” for purposes
of the statute only if it would have (1) significantly reduced the risk of the claimant’s injuries without
substantially impairing its utility and (2) been economically and
technologically feasible at the time. Id.
§ 82.005(b); see also Smith v. Aqua-Flo,
Inc., 23 S.W.3d 473, 477 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).[6]  To prove a safer alternative design under
this definition, a party necessarily must compare the risk created by the
original design with the risks created by the alternative design.  Thus, both the definition of a design defect
in section 82.005 and the presumption created in design-defect cases under
section 82.008 are defined, in part, by the risks implicated in the case.[7]  

The
Hamids argue that the Code Construction Act requires
us to consider legislative history. But that act is permissive, not mandatory. Tex. Gov’t Code Ann. § 311.023(3) (“In construing a statute,
whether or not the statute is considered ambiguous on its face, a court may consider … legislative history[.]”) (emphasis added); see also Ojo v. Farmers Group, Inc., No. 10-0245, 2011 WL 2112778, at *13 n. 13 (Tex. May 27,
2011) (Jefferson, C.J., concurring); id.
at *15–16, 21 & n. 78 (Willett, J., dissenting) (noting that the act’s
language “is permissive” and therefore allows courts to “consider outside aids
even absent ambiguity” but the Court’s rule that courts should not do so “has
been mandatory”). The Texas Supreme Court has repeatedly
held that when courts construe statutes, they should start
with the text because it is the best indication of the Legislature's intent. See Fresh Coat, Inc. v. K–2,
Inc., 318 S.W.3d 893, 901 (Tex. 2010) (“Our ultimate purpose when
construing statutes is to discover the Legislature’s intent.  Presuming that lawmakers intended what they
enacted, we begin with the statute’s text, relying whenever possible on the
plain meaning of the words chosen.”) (citations and
quotations omitted); Entergy Gulf States,
Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009) (“Therefore, our practice when construing a statute is to recognize that the words [the
Legislature] chooses should be the surest guide to legislative intent.”).  “When the words of a statute are
unambiguous, then, this first cannon is also the last:
‘judicial inquiry is complete.’” Connecticut Nat’l Bank v. Germain, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149
(1992) (quoting Rabin v. United States, 449 U.S. 424, 430, 101 S. Ct. 698, 701
(1981)).  A court should interpret a
statute by reference to its language alone when the court can do so.  Fresh Coat, 318 S.W.3d at
901.  Only
when the text is ambiguous is it appropriate for a court to examine legislative
history.  Entergy Gulf States, 282 S.W.3d at 437 (“Where text is clear, text
is determinative[.]”); City of Rockwall v. Hughes, 246 S.W.3d 621, 626 (Tex. 2008) (“When
a statute’s language is clear and unambiguous, it is inappropriate to resort to
rules of construction or extrinsic aids to construe the language.”).  In this way, courts are able “to avoid sacrificing a clear
textual command to conflicting language in an extrinsic, non-authoritative
source.  The
animating principle behind this standard is a reluctance to use legislative
history to interpret a clear statute.”  Ojo,
2011 WL 2112778, at *12 (Jefferson, C.J., concurring).  

Based on these principles, courts have
refused to “give overriding weight to statements” made by legislators during
floor debates on the issue before the court. 
Molinet v. Kimbrell,
No. 09-0544, 2011 WL 182230, at *6  (Tex. Jan. 21, 2011).  “Statements made during the legislative process
by individual legislators . . . are not evidence of the collective intent of
the majorities of both legislative chambers that enacted a statute.”  Id.;
see also Combs v. Texas Entm’t Ass’n, Inc., 347
S.W.3d 277, 288 (Tex. 2011) (holding that tax was constitutional regardless “of what legislators said or did not say” during legislative
process and quoting United States v. O’Brien, 391 U.S. 367,
383–84, 88 S. Ct. 1673 (1968) for proposition that “What motivates one
legislator to make a speech about a statute is not necessarily what motivates
scores of others to enact it, and the stakes are sufficiently high for us to
eschew guesswork”).

          Under the
plain language of section 82.008(a), we hold that the threshold determination of
whether the presumption applies turns on the relevant product risk, not the
particular defect alleged by the plaintiff.  
We overrule the Hamids’ first challenge to the
trial court’s jury instruction on the rebuttable presumption.

Conclusion

Based on the plain language of the
section 82.008(a), we reject the Hamids’ assertion
that the statutory presumption of no liability does not apply when there is not
a federal safety standard or regulation that relates to the specific product
defect alleged by the plaintiff.  Because
the Hamids’ other
challenges to the trial court’s submission of a rebuttable presumption
instruction under section 82.008 were not preserved by their charge objection,
they are waived.  We therefore conclude
that the Hamids have not established reversible
charge error, and we affirm the trial court’s judgment. 


 

 

Harvey Brown

Justice 

 

Panel consists of Justices
Radack, Sharp, and Brown.

Justice
Sharp, dissenting.  Dissent to follow.











[1]
          See Tex. Civ. Prac. & Rem. Code Ann. § 82.008(a) (West 2011).





[2]
          According to the testimony, when a vehicle turns, there is always some
slipping; the question is the amount of slipping.  

 





[3]           The Hamids contend
on appeal that the “threshold question” is whether the two FMVSSs governed the
risk in question.  But, this argument was
not made during the charge conference. 
The parties disagree regarding the nature of the risk.  The Hamids claim
that the risk is “the failure to maintain vehicle control during emergency
maneuvers due to rear-wheel spin out, which, in turn, was caused by the lack of
an ESC/VSC system.”  Thus, they narrowly
define the risk and, based on that risk, suggest that the vehicle is defective
absent a VSC.  Alternatively, they argue
that the risk is defined as “the danger of loss of and/or failure to maintain
control due to rear wheel spin outs (i.e. without reference to ESV/VSCDF
standards).”  The Hamids
argue that the product risk is defined according to the plaintiff’s
allegations, and that they have never contended that the loss of control was
due to a braking system failure.  

Toyota, on the other hand, argues for a broad definition of the risk,
defining it as “loss of vehicle control causing a crash” and contends that the
two FMVSSs in question address that risk. 
Thus, according to Toyota, it satisfied the standards that “governed the
product risk that allegedly caused [the] harm.” They further argue that the
product risk is not the absence of a particular safety device but the reasons
for that safety control device. 

The trial court never had an opportunity to decide which position was
correct because neither party raised these contentions during the charge
conference or identified any expert testimony defining the risk.   





[4]           FMVSS 105 is the standard for hydraulic and
electric brake systems.  Its purpose is
“to insure safe braking performance under normal and emergency conditions.”  49 C.F.R. § 571.105.  FMVSS 135 also pertains to brakes.  It sets the standards for service brake and
associated parking brake systems.  Its
stated purpose also is “to ensure safe braking performance under normal and
emergency conditions.”  49 C.F.R. § 571.135. 
Both these standards, then, specifically address the standards for
brakes on vehicles in order to ensure safe braking performance under all
circumstances.  According to Jerry
Walker, Toyota’s expert on the vehicle’s design, one purpose of these standards
is to avoid spin-outs during braking.  





[5]           These two elements must be proven, but are
not sufficient by themselves to establish a defective design claim.  Honda
of Am. Mfg., Inc. v. Norman,
104 S.W.3d 600, 604 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); Allen
v. W.A. Virnau & Sons, Inc., 28 S.W.3d 226, 232 (Tex. App.—Beaumont
2000, pet. denied).





[6]           Texas
courts also require proof that the product was
unreasonably dangerous to the user, which is determined by weighing its risk
and utility. Honda of Am., 104 S.W.3d
at 604 (citing Hernandez
v. Tokai Corp., 2 S.W.3d
251, 257 (Tex. 1999)).  “In addition, a plaintiff complaining of a design defect is
required to show that ‘the safety benefits from its proposed design are foreseeably
greater than the resulting costs, including any diminished usefulness or
diminished safety’—that is, that the alternative design not only would have
reduced the risk of harm in the instant case, but also would not, ‘under other
circumstances, impose an equal or greater risk of harm.’” Id. (quoting Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 337 (Tex. 1998)).





[7]           Additionally, the plaintiff can defeat
the presumption based on a showing that the federal safety standards “were
inadequate to protect the public from unreasonable risks of injury or
damage.  Tex. Civ. Prac. & Rem. Code Ann. § 82.005(b)(1). Thus, a plaintiff’s response likewise focuses on
risks.