**LIBERTY MUTUAL INSURANCE CO., Appellant,**

v.

**Mario CAMACHO, Appellee.**

**No. 09–06–305 CV.**

Court of Appeals of Texas, Beaumont.

Submitted March 22, 2007.

Decided June 21, 2007.

　

David Luningham, Scott E. Lindsey, Watson, Caraway, Harrington, Nelson, Midkiff & Luningham, LLP, Fort Worth, for appellant.

Leslie C. Taylor, Eloy E. Gaitan, Houston, for appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

We resolve two principal questions in this appeal. First, we determine if the evidence in this workers' compensation case is legally sufficient to support the jury's finding that Mario Camacho suffered a skull injury. Second, we decide whether the trial court improperly instructed the jury to give the decision of the Texas Workers' Compensation Commission no special weight. We answer both questions in the affirmative and reverse and remand the case for a new trial.

### TRIAL TESTIMONY AND VERDICT

Camacho was a rancher with more than twenty years' experience at the time of his injury and a long-term employee of JMR Ranching. In September 1991, Camacho's horse reared up and struck him in the face. He fell from the horse to the ground.

Selma Steele, co-owner of the ranch, received a telephone call about Camacho's accident and arrived at the scene shortly thereafter. When she arrived, Camacho "had a big knot on his head and a knot over the left eye and his nose was bleeding." While on the way to Steele's home in her car, Camacho fell over and appeared to have gone to sleep. Steele took Camacho to the hospital.

Camacho was initially treated at the Tomball Regional Hospital Emergency Room. Dr. John Sanders, the emergency room physician, diagnosed Camacho as having suffered a concussion. Dr. Sanders ordered the following tests: (1) a CT scan of the head, without contrast, which was reported as normal; (2) a bone scan, which was reported as normal with the exception of degenerative changes in the cervical spine; (3) an x-ray of the nasal bones, which was reported as showing no evidence of fracture; and (4) an x-ray of the cervical spine, which was reported as showing no acute fracture.

Dr. Susan Garrison, a physician certified by the American Board of Physical Medicine and Rehabilitation, reviewed Camacho's records at Liberty Mutual's request in 2005 in order to address whether Camacho suffered a skull injury due to his 1991 fall. Dr. Garrison, the only medical doctor to testify at trial, stated that Camacho's tests, x-rays, bone scans, and CT scans showed "no evidence of injury to the skull as a result of that accident." In her opinion, Camacho had a closed head injury but he "did not have an injury to the skull." Dr. Garrison clarified that her opinions were based upon the reports of the tests administered at Tomball Regional because the actual films of the tests had been destroyed by the hospital. Dr. Garrison further testified that because the bone scan was done with contrast material, if Camacho had suffered a bone bruise of the

skull, the test "would have lighted up, and it didn't light up." Dr. Garrison did not see or treat Camacho.

Dr. Richard Pollock, a neuropsychologist, testified that he began treating Camacho in 1994. According to Dr. Pollock, Camacho's hospital records reflected that he suffered a closed head injury in the accident. Dr. Pollock categorized Camacho as an incurable imbecile and testified that Camacho's condition was permanent. Dr. Pollock also opined that Camacho "is not capable of living independently."

Camacho testified at trial regarding the effects of his injury on his ability to work and to engage in daily activities of living. He did not testify about how his injury occurred.

At the conclusion of the trial, the trial court submitted one issue to the jury accompanied by instructions. The court submitted the following instructions pertinent to this appeal:

> You are instructed that the Texas Workers' Compensation Commission Appeals found that the Plaintiff did not sustain an injury to the skull that resulted in incurable imbecility. The party dissatisfied with the decision of the Appeals Panel may file suit in District Court for Judicial Review. The decisions of the Texas Workers' Compensation Commission are to be given no special weight. You, as jurors, decide the weight and credibility of the evidence submitted before you.

The jury returned its verdict, finding that Camacho "sustained an injury to his skull that resulted in incurable imbecility." Subsequently, the trial court awarded Camacho lifetime income benefits in accordance with the jury's verdict.

## SKULL INJURY ISSUE

■ Liberty Mutual contends that Camacho failed to present legally sufficient

evidence establishing that he suffered a skull injury. Although at trial it challenged whether Camacho's injury caused his imbecility, on appeal, Liberty Mutual does not challenge that aspect of the jury's finding. Rather, Liberty Mutual argues that the lifetime benefits provision required Camacho to prove an injury to the bones of his skull in order to recover lifetime benefits. The statutory language in effect at the time of Camacho's injury provided, in pertinent part:

> (a) Income benefits shall be paid until the death of the employee for:
>
> . . . .
>
> (6) an injury to the skull resulting in incurable insanity or imbecility.

Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1 § 4.31, 1989 Tex. Gen. Laws 42 (amended 1997) (current version at Tex. Lab.Code Ann. § 408.161(6) (Vernon 2006)).

Liberty Mutual contends that an injury to the "skull" is an absolute requirement under the version of the statute at issue, and that a brain or head injury, without a skull injury, is insufficient.[1] In support of its argument, Liberty Mutual cites *Barchus v. State Farm Fire & Casualty Co.*, 167 S.W.3d 575 (Tex.App.-Houston [14th Dist.] 2005, pet. denied), and asserts that the Fourteenth Court of Appeals decided that the statute at issue requires an injury to the skull. However, in *Barchus,* the trial court's finding that Barchus had sustained an injury to his skull was not challenged on appeal. *Id.* at 580. Rather, the issue addressed was whether the Compensation Act required the claimant to prove that his skull had been fractured in order to receive lifetime income benefits. *See id.* In contrast, the case before us requires that we interpret the statute's meaning in its use of the term "skull" in order to

determine whether a blow to the head, which results in imbecility, fulfills the requirements of the statute.

### Standard of Review

■ The jury found that Camacho sustained an injury to his skull that resulted in incurable imbecility. Because Camacho's claim was denied at the administrative level, Camacho had the burden to prove by a preponderance of the evidence that he sustained an injury to his skull. Tex. Lab.Code Ann. § 410.303 (Vernon 2006). In reviewing a jury verdict for legal sufficiency, we consider all of the evidence in the light most favorable to the prevailing party, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005); *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex. 1998). Thus, on this record we must credit favorable evidence for Camacho if reasonable jurors could, and disregard evidence contrary to the jury's finding that Camacho suffered a skull injury, unless reasonable jurors could not.

### Statutory Construction

To resolve this appeal, we must determine whether a severe blow to the head causing bruising and a concussion that renders an employee an imbecile constitutes a skull injury for purposes of the lifetime benefits provision of the Workers' Compensation Act. *See* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1 § 4.31, 1989 Tex. Gen. Laws 42 (amended 1997). The Act has never defined the term "skull." *See*

---

1. In contrast, since 1997, the compensation statute provides for lifetime benefits for "a physically traumatic injury to the brain resulting in incurable insanity or imbecility." Tex. Lab.Code Ann. § 408.161(a)(6) (Vernon 2006).

*id.; see also* TEX. LAB.CODE ANN. § 401.011(Vernon 2006).

A court's objective in construing a statute is to "determine and give effect to the Legislature's intent." *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). When the meaning of a word in a statute is not ambiguous, we ordinarily give the word its common meaning. *Id.; Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999). In ascertaining legislative intent, our review is not confined to isolated words, phrases, or clauses; rather, we examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 90 (Tex. 2001); *see* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (instructing courts to construe words and phrases in context).

The Code Construction Act lists factors that may be considered in construing a statute, whether or not the statute is ambiguous on its face. TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005). These factors include, among other things, (1) the statute's objectives; (2) the circumstances under which the statute was enacted; (3) the statute's legislative history; (4) common law, former law, and similar provisions; (5) the consequences of the statutory construction; and (6) administrative construction of the statute. *Id.* § 311.023(1)-(6); *In re Canales,* 52 S.W.3d 698, 702 (Tex.2001). We also presume that the Legislature intended a just and reasonable result. TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2005); *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex. 2001).

Commonly used dictionaries assist in determining a word's common use. *See generally Powell v. Stover,* 165 S.W.3d 322, 326 (Tex.2005); *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child*

*Care, Inc.,* 145 S.W.3d 170, 196 (Tex.2004). One dictionary defines "skull" to mean:

1 a: the skeleton of the head of a vertebrate: the bony or cartilaginous case or framework that encloses and protects the brain and chief sense organs, supports the jaws, . . . and consists of the cranium, the bony capsules of the nose, ear, and eye, and the jaws b: the cranium together with those bones that are immovably fused with it (as the mammalian upper jaw) 2: the seat of understanding or intelligence: MIND . . . .

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2135 (2002). In construing a statute, we are also required to examine the context of the statute and the Legislature's intent. The context of the statute at issue does not limit itself to injuries to the bones of the skull; in fact, an injury to the bones of the skull that did not result in imbecility would not result in the award of lifetime income benefits. Thus, the statute appears to be triggered by two events: a blow to the head and an injury to the brain that results in imbecility or insanity. Thus, the context of the statute supports defining the term "skull" in a manner that includes a blow to the head that causes imbecility.

"The primary purpose of the Texas Workers' Compensation Act is to benefit and protect injured employees." *Barchus,* 167 S.W.3d at 578. If we accepted Liberty Mutual's contention regarding the meaning of the word "skull," imbeciles receiving a fracture or bone bruise would receive lifetime benefits, while imbeciles whose skulls had been harmed by a blow but who had no demonstrable bone injury would not. Since the purpose of the statute is to benefit and protect injured workers, and because both of these classes suffer from severe, permanent, and disabling injuries, it appears more consistent with the pur-

**459**

poses of the Act to apply the broader definition of the term "skull" to allow the recovery of lifetime benefits to both classes of injured employees. "It is well settled that the Workers' Compensation Act should be liberally construed in favor of the worker." *Lujan v. Houston Gen. Ins. Co.*, 756 S.W.2d 295, 297 (Tex.1988) (citing *Hargrove v. Trinity Universal Ins. Co.*, 152 Tex. 243, 245, 256 S.W.2d 73, 75 (1953)). Construing the term "skull" to require an injury to the bones of the skull, as opposed to an injury to "the seat of understanding," would not protect workers who receive severe blows to the head but who do not suffer a skull fracture or other identifiable injury to the bones of the skull.

 Liberty Mutual argues that we should utilize the more narrow definition of the term "skull" used by the Texas Workers' Compensation Commission. While we generally consider an administrative agency's interpretation of a term, it is not binding and carries no presumption of validity. *Barchus*, 167 S.W.3d at 578. The *Barchus* court stated: "To the extent the Commission has concluded that a claimant must show evidence that he fractured his skull to be entitled to [lifetime income benefits], we find that such conclusion is inconsistent with the plain language of the statute." *Id.* at 580. We agree that adopting a narrow definition of "skull injury" that would require evidence of skeletal damage is inconsistent with the Legislature's intent to compensate for life severely injured employees who are injured directly by a blow to their head. *See id.*

 Finally, we note that the lifetime benefits provision at issue requires proof of an "injury" to the skull. Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1 § 4.31, 1989 Tex. Gen. Laws 42 (amended 1997). The term "injury" was broadly defined as "damage or harm to the physical structure of the body and those diseases or infec-

tions naturally resulting from the damage or harm." *Id.*, 1989 Tex. Gen. Laws 3 (see current version at TEX. LAB.CODE ANN. § 401.011(26) (Vernon 2006) wherein the term is similarly defined). In this case, it was not disputed that Camacho suffered a closed head injury. A blow to the head that causes bruising and unconsciousness and results in a diagnosis of a closed head injury is, in our opinion, sufficient harm to the skull to meet this statute's requirement of a skull injury. Therefore, we overrule Liberty Mutual's legal sufficiency challenge to the jury's finding that Camacho sustained a skull injury. Issue one is overruled.

## JURY INSTRUCTION

 In issue three, Liberty Mutual asserts that the trial judge improperly instructed the jury to "give no special weight" to the decision of the Texas Workers' Compensation Commission. Camacho responds that the trial court's instruction "was a correct statement of the law." We review whether a trial court erred in giving a jury instruction under an abuse of discretion standard. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990).

In jury trials, the Workers' Compensation Act requires the trial court to inform the jury "of the appeals panel decision on each disputed issue ... that is submitted to the jury." TEX. LAB.CODE ANN. § 410.304(a) (Vernon 2006). Following the Legislature's enactment of the Act, the Texas Supreme Court in *Texas Workers' Compensation Commission v. Garcia*, 893 S.W.2d 504, 528 (Tex.1995), rejected a challenge to the constitutionality of this particular provision of the Act. The Supreme Court stated:

> The Act does specify certain limiting procedures not found in a pure trial de novo. First, the jury is informed of the

Commission's decision. Because the jury is not required to accord that decision any particular weight, however, this procedure does not impinge on the jury's discretion in deciding the relevant factual issues. We hold that this procedure does not violate a claimant's right to trial by jury.

*Id.* The Supreme Court stated that the jury is not *required* to give the decision any "particular weight;" however, the Court did not affirmatively direct that juries are to give appeals-panel decisions "no special weight." *Id.* Further, the Supreme Court did not direct trial courts to give an instruction to the jury regarding the weight, or lack thereof, of the appeals-panel's decision. *Id.*

■■■ The Supreme Court's language in *Garcia* suggests that a juror is free to give the appeals-panel decision no weight, some weight, or significant weight, depending on that particular juror's view of the evidence. *See id.* Although the jury is not bound to follow the appeals-panel decision, it may give it weight if it so chooses. In this case, however, by affirmatively instructing the jury to give the decision "no special weight," the jurors were instructed to all but disregard the decision of the appeals-panel. There is a material difference between an instruction that leaves the jury free to accord the decision of the appeals-panel the weight the jury thinks it deserves, and an instruction that tells the jury to discount, if not disregard, the decision. *Lemos v. Montez,* 680 S.W.2d 798, 801 (Tex.1984) ("There is a material difference between an instruction that the happening 'is not' negligence and an instruction that the happening 'does not necessarily imply' negligence."). "The jury does not need either instruction. This court has treated addenda to the charge as impermissible comments that

tilt or nudge the jury one way or the other." *Id.*

■■■ An instruction by a trial court that misstates the law or misleads the jury is improper. *Steak & Ale of Tex., Inc. v. Borneman,* 62 S.W.3d 898, 905 (Tex.App.-Fort Worth 2001, no pet.) (citing *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 90 (Tex.1973)). "A requested instruction that is affirmatively incorrect is not 'substantially correct' as that term is used in Rule 278's requirement that proposed questions and instructions be substantially correct." *Baylor Univ. v. Coley,* 221 S.W.3d 599, 50 Tex. Sup.Ct. J. 621, 2007 WL 1162489, at *7 (Tex. April 20, 2007) (Johnson, J., concurring). Moreover, the Rules of Civil Procedure prohibit the trial court from making a "comment directly on the weight of the evidence" in its jury charge. *See* Tex.R. Civ. P. 277.

■■■ In some instances, it is error for the trial court to give the jury an instruction even when it is a substantially correct statement of the law. For example, in *Acord v. General Motors Corporation,* 669 S.W.2d 111 (Tex.1984), the Supreme Court reversed a jury verdict based on charge error when the trial court instructed the jury that a manufacturer is not an insurer of the product it designs. 669 S.W.2d at 113, 116. Although the instruction was a correct statement of law, the Supreme Court found harmful error and said: "In a closely contested case as is the one at bar, to single out for the jury that General Motors was neither an insurer nor a guarantor of a perfect or accident-proof product, which incorporated ultimate safety features, was a comment on the case as a whole. As such, it constituted harmful error." *Id.* at 116.

■■■ We hold that the instruction submitted by the trial court in this case constituted an impermissible comment that

tilted or nudged the jury's consideration of the decision of the appeals-panel. The instruction to the jury singled out one piece of evidence admitted at trial, and implied that the jury should treat the appeals-panel decision differently than it was to treat the other evidence admitted at trial; in that way, the instruction served to comment on the case as a whole. We further hold that the instruction the trial court submitted was not a substantially correct statement of law. For these two reasons, we conclude the trial court erred in instructing the jury to give the appeals-panel decision "no special weight."

## HARM

In cases involving an incorrect jury instruction, an appeals court reverses only if the instruction " 'was reasonably calculated to and probably did cause the rendition of an improper judgment.' " *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex.2006) (quoting *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995)). We examine the entire record to evaluate whether the instruction probably caused the rendition of an improper verdict. *Id.*

The appeals-panel decision involved both the issue of Camacho's injury and the issue of his imbecility. The issue at trial regarding Camacho's imbecility was closely contested. Dr. Garrison testified that Camacho was not an imbecile. The jury also heard Dr. Pollock's testimony that Camacho's testing showed that he functioned below a first grade level and that he had an IQ score in the upper 60's. Dr. Pollock additionally testified that Camacho was not capable of independent living because of his severe cognitive impairment and that he functioned at an imbecilic level. However, Dr. Pollock acknowledged that the records of another neuropsychologist contained a contrary opinion that Camacho

did not suffer from incurable imbecility. Liberty Mutual's evidence also included a letter from Dr. Francisco Perez, a neuropsychologist. Dr. Perez's letter states, "I don't believe there is any evidence of a cerebral dysfunction or any sequela from a head injury." The record also contains a report by Dr. Jeremiah Twomey, who practices occupational medicine, in which he opined, "I do not feel that the records I reviewed qualify him for lifetime benefits on the basis of psychological impairment to the level of imbecility." Finally, the report of Dr. John Cassidy, a psychiatrist, states: "This patient does not meet [the] criteria of statute 408.161(a)(6) of the TWCC Act for incurable insanity or imbecility."

Camacho also addressed his physical limitations during his testimony at trial. Camacho testified that he continued to drive on the ranch, but not in the city, and that he could no longer train horses. Camacho indicated that he could bathe and dress himself, saddle and water horses, sometimes feed the cattle, load light things, participate in moving cattle from one pen to another, and assist in taking cattle to auctions.

The trial court instructed the jury that an imbecile was "a mentally deficient person, especially a feebleminded person having a mental age of three to seven years and requiring supervision in the performance of routine daily tasks or caring for himself." From the above discussion, it is apparent that the evidence on whether Camacho functioned as an imbecile conflicted.

The purpose of instructing the jury on the decision of the appeals-panel distinguishes it from cases when courts have found general instructions to the jury improper, but nevertheless, harmless. *See generally Urista*, 211 S.W.3d at 756 (harmless error rule applied to improper submission of unavoidable accident instruction).

In this case, the instruction regards a specific piece of evidence: the appeals-panel decision. Because the instruction applies to specific evidence, there is a danger that the jury may infer from the instruction given here, that the trial judge disagrees with the appeals-panel's resolution of the dispute. Also, the instruction in *Urista* was a substantially correct statement of law; here, the instruction is not substantially correct. Finally, under *Urista's* facts, it was unclear whether the instruction caused the jury to find as it did. *See id.* at 758. Here, the jury rejected Liberty Mutual's case that was supported by evidence from several physicians while accepting Camacho's case that relied on the testimony of one expert witness who was not a physician.

 In conclusion, the jury was entitled to give the decision of the appeals-panel whatever weight it thought the decision deserved. The trial court's instruction to give the decision "no special weight" was an incorrect statement of the law and served to nudge the jury toward responding affirmatively in deciding whether the injury resulted in incurable imbecility. We hold that the erroneous submission of the instruction at issue probably caused the rendition of an improper verdict.

In issues two, four and five, Liberty Mutual raises additional issues. Because reviewing these issues would afford Liberty Mutual no greater relief than the relief granted herein, we do not address these three issues. *See* Tex.R.App. P. 47.1. Because the trial judge improperly instructed the jury, we reverse the judgment and remand this cause for the purpose of a new trial.

REVERSED AND REMANDED.