ACCEPTED
01-14-00508-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/23/2015 12:56:37 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00508-CV

IN THE

*First Court Of Appeals at Houston*

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/23/2015 12:56:37 PM

CHRISTOPHER A. PRINE
Clerk

_____

FRANCISCO CHAMUL,

Appellant,

v.

AMERISURE MUTUAL INSURANCE CO.,

Appellee.

_____

Appealed from the 190TH Judicial District Court of Harris County, Texas

Trial Court No. 2012-14219

Hon. Patricia J. Kerrigan, Presiding Judge

___

APPELLEE'S BRIEF

___

SMITH & CARR, P.C.
Dana M. Gannon
State Bar No. 07623800
dgannon@smithcarr.com
Joy M. Brennan
State Bar No. 24040569
jbrennan@smithcarr.com
9235 Katy Freeway, Suite 200
Houston, Texas 77024
Telephone: (713) 933-6700
Facsimile: (713) 933-6799
ATTORNEYS FOR APPELLEE,
AMERISURE MUTUAL INS. CO.

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES & COUNSEL

Appellant

Francisco Chamul
c/o Larry Trimble
902 Heights Blvd.
Houston, Texas 77008

Counsel for Appellant on Appeal

Bradley Dean McClellan
Law Office of Richard Pena, P.C.
State Bar No. 13395980
1701 Directors Blvd., Suite 110
Austin, Texas 78744
Brad.McClellan@yahoo.com
Telephone: (512) 327-6884
Facsimile: (512) 327-8354
Appellant Lead Counsel on Appeal

Larry Trimble
State Bar No. 00786295
902 Heights Blvd.
Houston, Texas 77008
ltrimble@texaslawspot.com
Telephone: (713) 863-8600
Facsimile: (713) 863-1161
Appellant Trial and Appellate
Counsel

Appellee

Amerisure Mutual Insurance Co.

Counsel for Appellee on Appeal

Dana M. Gannon – Lead Counsel
State Bar No. 07623800
dgannon@smithcarr.com
Joy Marie Brennan
State Bar No. 24040569
jbrennan@smithcarr.com
Smith & Carr, P.C.
9235 Katy Freeway, Suite 200
Houston, Texas 77024
Telephone: (713) 933-6700
Facsimile:   (713) 933-6799

## TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL........................................................ ii

TABLE OF CONTENTS........................................................................... iii

INDEX OF AUTHORITIES........................................................................v

STATEMENT OF THE CASE.................................................................. vii

ISSUE PRESENTED............................................................................. viii

STATEMENT OF FACTS ..........................................................................2

SUMMARY OF THE ARGUMENT..........................................................5

ARGUMENT.............................................................................................7

I.      The District Court applied the correct definition of imbecility............7

        A       The trial court adopted the only definition of imbecility
                found in Texas case law and used when the case was before
                the DWC...................................................................................7

        B.      The definition applied by the trial court reflects the common
                and technical usage of the word imbecile.................................8

        C.      Chamul asserts multiple, competing definitions of imbecility .12

II.     The trial court did not err in finding the affidavit of Dr. Ivanhoe
        to be a sham affidavit..........................................................................16

III.    The trial court correctly granted summary judgment in favor of
        Amerisure ............................................................................................19

        A       Standard of Review..................................................................19

        B.      Amerisure was entitled to summary judgment ........................20

        C.      Entitlement to Attorneys' Fees................................................26

CONCLUSION .......................................................................................27

PRAYER ...........................................................................................28

CERTIFICATE OF COMPLIANCE.........................................................29

CERTIFICATE OF SERVICE...................................................................29

# INDEX OF AUTHORITIES

## CASES

*Amer. Home Assur. Co. v. De Los Santos,*
*2012 Tex. App. Lexis 789 (Tex. App.—San Antonio 2012, pet. filed)*...........20

*City of Galveston v. Tex. Gen. Land Office*,
196 S.W.3d 218  (Tex. App.—Houston [1st Dist.] 2006, pet. denied)..........11

*Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*,
835 S.W.2d 75 (Tex. 1992).....................................................................27

*Farroux v. Denny's Restaurants, Inc.,*
962 S.W.2d 108 (Tex. App. – Houston [1st Dist.] 1997, no pet.) .................16

*FM Props. Operating Co. v. City of Austin*,
22 S.W.3d 868 (Tex. 2000).......................................................................19

*Gulf States Utils. Co. v. Low*,
79 S.W.3d 561 (Tex. 2002).......................................................................27

*Liberty Mutual Ins. Co. v. Camacho*,
228 S.W.3d 453 (Tex. App.—Beaumont 2007, pet. denied) ....................4, 7

*Lopez v.Munoz, Hockema & Reed, LLP*,
22 S.W.3d 857 (Tex. 2000).......................................................................15

*National Union Fire v. Burnett*,
968 S.W.2d 950 (Tex. App.—Texarkana 1998, no pet.) ...........................13

*Provident Life & Acc. Ins. Co. v. Knott*,
128 S.W.3d 211 (Tex. 2003).....................................................................19

*Rhone-Poulenc, Inc. v. Steel*,
997 S.W.2d 217 (Tex. 1999).....................................................................19

*Travelers Ins. Co. v. Seabolt*,
361 S.W.2d 204(Tex. 1962).......................................................................15

*Texas Workers' Compensation Commission v. Garcia*,
893 S.W.2d 504 (Tex. 1994) ........................................................................2

*Valence Operating Co. v. Dorsett*,
164 S.W.3d 656 (Tex. 2005) ......................................................................19


ADMINISTRATIVE DECISIONS

TEXAS WORKERS' COMPENSATION COMMISSION APPEAL NO. 961340 ...........4

TEXAS WORKERS' COMPENSATION APPEALS PANEL DECISION 121131-S .....13

STATUTES & RULES

TEX. GOV'T CODE § 311.011 .................................................................8, 9, 12

TEX. LAB. CODE
    § 408.0041 ...........................................................................................21
    § 408.161 ....................................................................................*passim*
    § 408.221(c) ........................................................................................27
    § 410.301 ...............................................................................................3

TEX. PROB. CODE § 601 (14) ...................................................................11

TEX. REV. CIV. STAT. ANN. ART. 8306, § 11a (Flahive 1988) .................. 9-10

OTHER MATERIAL

MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS
(6th ed. 2003) ............................................................................................9

MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993) ...................9

TEXAS WORKERS' COMPENSATION MANUAL, § 408.161 (2015) ...................11

THE AMERICAN HERITAGE COLLEGE DICTIONARY (4th ed. 2007) .............9, 10

# STATEMENT OF THE CASE

Nature of the case:

This is a workers' compensation case. Appellant, Francisco Chamul, a workers' compensation claimant, sought judicial review of an administrative decision regarding entitlement to lifetime income benefits based on an allegation of incurable insanity resulting from a traumatic brain injury. CR 5.

Trial Court:

The Honorable Patricia J. Kerrigan, in the 190th Judicial District Court of Harris County, Texas.

Course of Proceedings:

The parties filed cross motions for summary judgment. CR 23, 145. The trial court granted Appellee's motion for summary judgment and denied Appellant's motion for summary judgment. CR 452.

Trial Court Disposition:

Judge Kerrigan entered a modified final judgment in favor of Appellee on March 31, 2014. CR 455.

# ISSUE PRESENTED

Issue 1:

Did the trial court correctly grant summary judgment in favor of Amerisure Mutual Insurance Co.?

**TO THE HONORABLE FIRST COURT OF APPEALS:**

The Appellant in this case, Francisco Chamul ("Chamul"), a workers' compensation claimant, filed this appeal seeking to reverse summary judgment granted in favor of the Appellee, Amerisure Mutual Insurance Co. ("Amerisure"), the workers' compensation carrier. CR 5. Chamul is seeking lifetime income benefits claiming incurable imbecility, a requirement under the Texas Labor Code. *Id*. His claim has been denied at every level. While the claim was pending before the Texas Department of Insurance, Division of Workers' Compensation (DWC), the State appointed a designated doctor to address the medical question related to Chamul's mental status., Dr. Stanley Hite, as designated doctor, found that Chamul did not meet the statutory requirements for incurable insanity or imbecility. CR 126. Based on the evidence presented at the DWC's contested case hearing his claim was rejected. CR 14. His claim was again rejected at the DWC's Appeals Panel which affirmed the findings from the contested case hearing. CR 12.

Having exhausted his administrative remedies, Chamul sought judicial review of the denied claim. The trial court granted Amerisure summary judgment on Chamul's claim for lifetime income benefits. CR 454-55.

Chamul has been unable to meet the statutory requirements for lifetime income benefits by failing to establish that he is an imbecile. Additionally, Chamul fails to address the basic tenets of statutory construction. He also fails to offer a

1

coherent alternative standard of construction for the term imbecility. Instead, Chamul asserts a multitude of definitions and tests, many for the first time on appeal and never utilized by any Texas court. For these reasons, the Court should affirm the trial court's judgment.

## STATEMENT OF FACTS

This case stems from the judicial review of a workers' compensation administrative decision. Appellant, Francisco Chamul, is a workers' compensation claimant. CR 16. Appellee, Amerisure Mutual Insurance Co. was the workers' compensation carrier. *Id*.

Chamul's workers' compensation claim proceeded through the administrative process set forth in the Texas Labor Code. By way of background, a workers' compensation claim proceeds through a three step administrative process. In *Texas Workers' Compensation Commission v. Garcia*, the Texas Supreme Court described the three step process in affirming the constitutionality of the scheme:

> The Commission resolves disputed claims through a three-stage hearing process: 1) the benefit review conference, 2) the contested case hearing, and 3) the administrative appeal. The benefit review conference, like the former prehearing conference, is an informal proceeding aimed at resolving the disputed issues by mutual agreement…
>
> The parties then proceed to a contested case hearing, a formal evidentiary proceeding with sworn testimony and prehearing discovery procedures. The hearing officer decides the disputed issues by written decision containing factual and legal findings, awarding benefits if they are due. The hearing officer's decision is binding

during the pendency of an administrative appeal and is final in the absence of appeal.

Any party may appeal the hearing officer's decision to an appeals panel with the Commission. The request for appeal and the opposing party's response must "clearly and concisely rebut or support the decision of the hearing officer on each issue on which review is sought. . . ."

The Commission's final decision may be appealed to the courts under what might be best described as modified de novo review.

893 S.W.2d 504, 514-15 (Tex. 1994). On judicial review, trial "is limited to issues decided by the appeals panel and on which judicial review is sought." TEX. LAB. CODE § 410.301.

The administrative history is important to the current issues on appeal in this case. Chamul's workers' compensation claim proceeded to a benefit review conference on July 29, 2011. CR 16. As Chamul's disputed issues were not resolved at the benefit review conference the issues were subsequently set for a contested case hearing. *Id*. A contested case hearing ("CCH") was held on November 14, 2011. *Id*. The CCH was held on the following issue:

1. Is the Claimant entitled to receive Lifetime Income Benefits, based on a physically traumatic brain injury resulting in incurable insanity or imbecility?

*Id*.

On November 15, 2011, the CCH Hearing Officer issued her Decision and Order finding that Claimant's compensable injury "has not resulted in Claimant

3

sustaining incurable insanity or imbecility." *Id.* at 18. The CCH Hearing Officer applied the definition of imbecility from *Liberty Mutual Ins. Co. v. Camacho* adopted by DWC's Appeals Panel "which contemplates that the affected individual will not only require supervision in the performance of routine tasks, but will have a mental age of three to seven years." CR 17 citing 228 S.W.3d 453 (Tex. App.—Beaumont 2007, pet. denied); TEXAS WORKERS' COMPENSATION COMMISSION APPEAL NO. 961340.

The CCH Hearing Officer found that Dr. Stanley Hite, M.D., the impartial designated doctor appointed by the DWC was "of the opinion that Claimant had not met the definition of imbecility." *Id.* Dr. Hite's report was unequivocal that Chamul was not an imbecile:

> Extent: I was asked to determine the degree of his traumatic brain injury and whether it resulted in incurable insanity or imbecility. He does not have symptoms of a psychotic disorder such as delusions, hallucinations, disorganized speech, incoherence, or grossly disorganized or catatonic behavior.
>
> According to Texas Courts, imbecility, means mentally deficient person, especially a feeble minded person, having a mental age of three to seven years, and requiring supervision of performance of routine daily tasks or caring for himself. **I do not believe that the examinee fits the definition of being an imbecile.** His father believes that he is functioning at, or most likely that of a 11-year old. I would tend to agree with that assessment.

CR 125-26 (emphasis added).

Chamul subsequently sought review before the DWC's Appeals Panel. The Appeals Panel upheld the ruling of the CCH Hearing Officer. CR 12. Chamul then filed his request for judicial review in Cause No. 2012-14219 in the 190th Judicial District Court of Harris County, Texas seeking judicial review of the administrative denial concerning entitlement to lifetime income benefits based on incurable insanity or imbecility. CR 5.

The parties subsequently filed cross-motions for summary judgment. CR 23, 145. The Court entered an order granting Amerisure summary judgment. CR 452. The order of the trial court further specified that the definition of imbecility applied in considering the parties' cross motions for summary judgment was "a mentally deficient person, especially a feebleminded person having a mental age of three to seven years of age and requiring supervision in the performance of routine daily tasks or caring for himself." *Id*. The trial court further found that the affidavit of Dr. Ivanhoe, submitted as summary judgment evidence by Chamul, was a sham affidavit and not considered as summary judgment evidence. *Id*. Final judgment was entered on March 31, 2014. CR 455.

## SUMMARY OF THE ARGUMENT

The trial court properly granted Amerisure's Traditional and No Evidence Motion for Final Summary Judgment and denied Chamul's Motion for Summary Judgment. The trial court correctly applied the definition of imbecility used before

the DWC and prior courts. Chamul failed to proffer competent summary judgment evidence meeting the definition of imbecility of "a mentally deficient person, especially a feebleminded person having a mental age of three to seven years of age and requiring supervision in the performance of routine daily tasks or caring for himself." Chamul does not appear to argue before this Court that he meets this definition.

As Chamul cannot meet the definition of imbecility applied by the trial court he is asking this Court to craft a new standard of imbecility. However, Chamul fails to assert a single standard of imbecility for the Court to adopt. Chamul's brief to this Court proposed multiple conflicting standards. The definition of imbecility applied by the trial court follows the tenets of statutory construction. The definition reflects the common and technical usage of the word imbecility. Further, the Texas Legislature previously declined to abandon the imbecility standard and adopt a broader standard like that proposed by Chamul.

Finally, the trial court correctly found the affidavit of Dr. Ivanhoe to be a sham affidavit. The testimony of Dr. Ivanhoe and the affidavit signed by Dr. Ivanhoe clearly contradict each other on the central issue of whether Chamul meets the definition of imbecility. Therefore, the Court should affirm the trial court's judgment.

6

**I.     The District Court applied the correct definition of imbecility.**

While incurable imbecility is an injury that may entitle a workers' compensation claimant to lifetime income benefits, imbecility is not defined in the Texas Labor Code. The parties are in agreement that no definition is offered in the Texas Labor Code for imbecility. Both parties also offered definitions of imbecility to the trial court in considering the parties' cross motions for summary judgment. Only the definition offered by Amerisure was used when the case was pending before the DWC. The definition is supported by Texas case law, is a common definition of the word, and reflects the legislative history of the statute at issue. The definition of imbecility used by the trial court was proper.

**A.     The trial court adopted the only definition of imbecility found in Texas case law and used when the case was before the DWC.**

The definition of imbecility the Court adopted in this case is the same definition set forth in *Liberty Mutual Insurance Co. v. Camacho*, a similar case concerning entitlement to lifetime income benefits due to imbecility. 228 S.W.3d 453, 461 (Tex. App.—Beaumont 2007, pet. denied). In *Camacho* the following definition was used to determine whether the claimant was an imbecile: "a mentally deficient person, especially a feebleminded person having a mental age of three to seven years and requiring supervision in the performance of routine daily

tasks or caring for himself." *Id.* This is the definition applied by the trial court in this case.

The definition used by the trial court is also the same definition used when this case was administratively decided before the DWC. *See* CR 17. Prior to seeking judicial review before this Court Chamul was required to seek review before the administrative Appeals Panel. Chamul made the same argument regarding the definition of imbecility to the administrative Appeals Panel. CR 118-18. The Appeals Panel rejected the argument and upheld the Decision and Order. Chamul attempted to change the imbecility definition with the trial court. This attempt was rejected and the trial court appropriately used the imbecility definition utilized during the administrative hearings.

**B.    The definition applied by the trial court reflects the common and technical usage of the word imbecile.**

The Texas Code Construction Act provides direction in the construction of imbecility in this case. Chamul argues to this Court that if imbecility is not defined generally then it should "leave alone" the imbecility question. Simply because no definition of imbecility appears in the Texas Labor Code or Texas Pattern Jury Charge does not mean that the term should not be construed. Texas Government Code § 311.011 provides that:

> (a)    Words and phrases shall be read in context and construed according to the rules of grammar and common usage.

(b)    Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

The definition of imbecility applied by the trial court reflects the common and technical usage of the word. Chamul fails to address basic statutory construction. This is because the definition applied by the trial court is in compliance with § 311.011. Multiple dictionaries reflect the same definition:

"[A] mentally deficient person, esp: a feebleminded person having a mental age of three to seven years and requiring supervision in the performance of routine daily tasks of self-care."

MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 578 (10th ed. 1993).

"A person of moderate to severe mental retardation having a mental age of from three to seven years."

THE AMERICAN HERITAGE COLLEGE DICTIONARY 692 (4th ed. 2007).

"A person of middle-grade mental deficiency, the individual's mental age is between 3 and 7 years."

MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS 1052 (6th ed. 2003).

The use of the term imbecility for entitlement to lifetime income benefits predates the current Texas Labor Code.  Prior to 1991, the Texas Workers' Compensation Act provided lifetime income benefits for injuries that resulted from "[a]n injury to the skull resulting in incurable insanity or imbecility" as an injury that established total and permanent incapacity. TEX. REV. CIV. STAT. ANN. ART.

8306, § 11a (Flahive 1988). The term dates back to the 1927 Texas Workers' Compensation Act. *Id*. The Texas Legislature has been afforded opportunities since 1927 to amend, alter, or change the requirement of imbecility. No changes to this requirement have occurred to date.

The reference to a specific age range of mental capacity for imbecility reflects the terms original usage. Imbecility and related terms may now seem antiquated and offensive, but were used to refer to a specific range of mental capacity. Different terms were used to describe mild, moderate, and profound mental retardation. THE AMERICAN HERITAGE COLLEGE DICTIONARY 688, 904 (4th ed. 2007) (defining "moron" as "a person of mild mental retardation having a mental age of from 7 to 12 years" and "idiot" as "a person of profound mental retardation having a mental age below three years."). The term imbecile is not a broad term encompassing mental incapacity generally.

Notably, while Texas Labor Code § 408.161 was modernized via amendment, efforts to remove the term imbecile failed. The 75th Texas Legislature amended Texas Labor Code § 408.161 in 1997 altering the requirement for lifetime income benefits from the "Old Law" requirement of "[a]n injury to the skull resulting in incurable insanity or imbecility" to "a physically traumatic injury to the brain resulting in incurable insanity or imbecility." TEX. LAB. CODE § 408.161 (Flahive 1998). An attempt was made to replace "incurable insanity or imbecility"

with "mental illness or mental retardation." Texas Workers' Compensation Manual, § 408.161 (2015). The Revisor's Notes to the statute refer to replacement of the terms. Tex. Lab. Code § 408.161 (Lexis 2015). However, the proposed change was rejected and the term imbecility continues to be the standard for entitlement to lifetime income benefits. Texas Workers' Compensation Manual, § 408.161 (2015).

Chamul is asking the Court to engage in judicial activism by expanding the imbecility definition in a manner never contemplated by the Texas Legislature. Simply put, Chamul wants imbecility to mean mental incapacity in its broadest terms. Chamul does not seek to challenge the definition of imbecility but rather the term itself. In *City of Galveston v. Tex. Gen. Land Office* this Court rejected an overbroad interpretation of a Texas Government Code provision because the interpretation urged by the appellant in that case was contrary to the plain language and legislative history of the statute. 196 S.W.3d 218, 223 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). The Court should similarly deny Chamul's request for a broad interpretation contrary to the plain language of the statute and legislative history.

Chamul compares the use of imbecility in the Texas Labor Code to the term "incapacitated person" in the Texas Probate Code. Tex. Prob. Code § 601 (14). However, the Texas Labor Code and the Texas Probate Code do not use the same

terms or standards. Simply because Chamul would prefer that the standard for lifetime income benefits be that of an "incapacitated person" under the Texas Labor Code does not alter the actual statutory language.

Chamul is essentially asking the Court to undo the term imbecility by instituting a broad definition or multifactorial test. Chamul's arguments are truly about setting a new standard of mental incapacity for entitlement to lifetime income benefits, not the definition of imbecility. That is the job of the legislature and not before the Court in this case. Texas Labor Code § 408.161 does not provide entitlement to lifetime income benefits for mental incapacity. Rather, it provides entitlement to lifetime income benefits for imbecility. The term continues to provide the statutory standard that must be met for entitlement to lifetime income benefits.

## C.     Chamul asserts multiple, competing definitions of imbecility.

Chamul's brief offers a variety of definitions and a multifactored test for determining imbecility. Chamul's brief argues that a technical definition of imbecility should not be used in determining whether a workers' compensation claimant has incurable imbecility. This is a new argument not advanced in Chamul's Motion for Summary Judgment or in response to Amerisure's Motion for Summary Judgment. Further, Chamul cites no Texas statute or case to support his view that a non-technical definition should be adopted.

12

Texas Government Code § 311.011(b) rejects this option. Rather the opposite is true and words that have acquired technical meaning should be "construed accordingly." There is no basis for rejecting a definition simply because it is a technical definition. Both parties directed the trial court to definitions for imbecility. Chamul's Motion for Summary Judgment provided that:

> Texas courts have adopted the following definition of imbecility: an irreversible brain injury, which renders the employee permanently unemployable and so affects the non-vocational quality of his life by eliminating his ability to engage in a range of usual cognitive processes.

CR 25.

But this definition has not been adopted by any court in Texas, despite Chamul's allegations otherwise. The definition offered by Chamul was merely discussed in dicta in both *National Union Fire v. Burnett* and Appeals Panel Decision 121131-S and not adopted. *Burnett*, 968 S.W.2d 950, 955 (Tex. App.—Texarkana 1998, no pet.) and TEXAS WORKERS' COMPENSATION APPEALS PANEL DECISION 121131-S (August 27, 2012). The Court in *Burnett* declined to adopt any definition of imbecility because that case dealt with an allegation of insanity not imbecility. *Burnett*, 968 S.W.2d at 956. Further, the Appeals Panel Decision 121131-S discussed in dicta multiple different definitions of insanity without adopting a single definition. APPEALS PANEL DECISION 121131-S, p. 3-4. There is

13

no reported Texas case that has adopted or used the definition urged by Chamul in his Motion for Summary Judgment (or presented newly to this Court on appeal).

Chamul does not argue that the Court should adopt this definition on appeal. Rather, Chamul appears to assert that a multifactorial test should be used. APPELLANT'S BRIEF, p. 13. Chamul cites no support for this 11 prong multifactorial test of Chamul's own creation. The multifactorial test is distinctive from the definition offered in Chamul's Motion for Summary Judgment. The multifactorial test included in Appellant's Brief also does not match the multitude of factors included in Chamul's Reply to its Motion for Summary Judgment. CR 142. Chamul is now asking the Court to consider new factors such as "is the person in need of ongoing mental treatment" and "is the person able to stay organized as an average person." APPELLANT'S BRIEF, p. 13. No support or explanation is provided for these new factors asserted.

Chamul also suggests multiple other definitions in his brief. Chamul offers that "the correct definition of imbecility would be a feeble minded person with significant cognitive disabilities with *maybe* a factor that one is not mentally able to independently take care of one's own needs." APPELLANT'S BRIEF, p. 12 (emphasis added). This is distinctly different than the definition presented by Chamul to the trial court. Further, this definition is confusing and vague, providing "maybe" a factor to be considered. No support is provided for using this

specific definition. Chamul also suggests later in his brief a definition of imbecility on appeal based on mental incapacity. APPELLANT'S BRIEF, p. 20. There is no coherent alternative standard of imbecility offered by Chamul for the Court to adopt.

Chamul cannot assert new arguments, theories, definitions, or tests on appeal to defeat summary judgment. *Lopez v.Munoz, Hockema & Reed, LLP*, 22 S.W.3d 857, 862 (Tex. 2000). Chamul has waived factors, arguments, or definitions not presented to the trial court. Similarly, Chamul also suggests, for the first time on appeal, that the Court should interpret imbecility under the loss of use standard applied in *Travelers Ins. Co. v. Seabolt*. 361 S.W.2d 204, 206 (Tex. 1962). Texas Labor Code § 408.161(a)(6) does not refer to the loss of mental capacity, but rather a traumatic brain injury that causes imbecility. The injuries for which the *Seabolt* loss of use test is applied all statutorily require "loss" of a body party and are distinctive from the subsection on traumatic brain injury. S*ee* TEX. LAB. CODE § 408.161(a)(1)-(4) (referring to "loss of sight in both eyes," "loss of both feet," "loss of both hands," and "loss of one foot. . .and loss of one hand."). Chamul cites no example of the *Seabolt* standard ever being applied to the definition of imbecility.

The trial court did not err in the definition of imbecility it applied in this case. Chamul asserts a variety of competing definitions and tests for the Court to

consider without addressing tenets of statutory construction. Chamul does not even address or argue that the trial court failed to follow guidelines regarding statutory construction. Chamul has presented a hodgepodge of tests for imbecility without setting forth a coherent alternative framework for determining imbecility.

## II.   The trial court did not err in finding the affidavit of Dr. Ivanhoe to be a sham affidavit.

The trial court correctly determined that the affidavit of Dr. Ivanhoe was a sham affidavit. While Chamul argues that the affidavit does not meet the standard of a sham affidavit he offers no comparison between Dr. Ivanhoe's affidavit and testimony. This is because the affidavit and testimony clearly contradict each other. Chamul notably fails to cite any of this Court's decisions regarding sham affidavits even though this Court is at the forefront of analysis on this area of the law.

This Court is clear that a party may not create an affidavit for the purpose of contradicting earlier testimony. *Farroux v. Denny's Restaurants, Inc.,* 962 S.W.2d 108, 111 (Tex. App. – Houston [1st Dist.] 1997, no pet.). When an affidavit contradicts earlier testimony "the affidavit must explain the reason for the change," *Id*. "Without an explanation of the change in the testimony, we assume the sole purpose of the affidavit was to avoid summary judgment." *Id*.

The affidavit of Dr. Ivanhoe clearly contradicts her previous testimony. Further, the differences between Dr. Ivanhoe's testimony and affidavit are to the central issue of imbecility as it was applied by the trial court. The affidavit,

16

submitted in Response to Defendant's Motion for Summary Judgment, concludes with the statement "Francisco Chamul does have severe cognitive deficits, which results in him having the mental capacity and behavior of a three to seven year old child." CR 313. The affidavit appears to have been executed after the administrative proceedings and before Dr. Ivanhoe's deposition.

Included in Defendant's Motion for Summary Judgment was the deposition testimony of Dr. Ivanhoe setting forth that Chamul appears to function on a much higher level:

> Q: So in terms of totality, though, of everything that you know during your years of treating Mr. Chamul, is his entire person – **does he behave at an age of a 3-to-7 year old?**
> A: **No.**

CR 130: Dr. Ivanhoe's Deposition, p. 24, Ins. 18-22 (emphasis added).

> Q: **But as it pertains to the totality of his personality and his functional ability, it is greater that that of a 7-year-old, isn't it?**
> A. **In many ways, yes.**

CR 131: Dr. Ivanhoe's Deposition, p. 27, Ins. 4-7 (emphasis added).

> Q: **Dr. Hite felt that Mr. Chamul was functioning at or most likely at – of that of a 11-to-12 year old. Do you agree with that?**
> A: I'm much more comfortable with 11-to-12 year-old, **yes.**

CR 134: Dr. Ivanhoe's Deposition, p. 57, Ins. 5-10 (emphasis added).

> Q: And in regards to your testimony in November of 2011, would you agree with me if it reflects that **you did not believe he met the definition of mental retardation** after his injury, is that an option that you still hold to?
> A. **Yes.**

CR 131: Dr. Ivanhoe's Deposition, p. 27, lns. 19-24 (emphasis added).

The affidavit of Dr. Ivanhoe appears to be a sham affidavit created exclusively for the purpose of attempting to create a fact issue where one does not exist to the central issue in this case. At the administrative contested case hearing, Dr. Ivanhoe offered sworn testimony and refused to state that Chamul had the mental capacity of a three to seven year old child:

> Q: Just a mentally deficient person, especially a feeble-minded person, having a mental age of 3 to 7?
> A: **Okay, I would tell you, no matter how hard either you try to pin me down, I can't put an age of 3 to 7**, because there are certain aspects of his character that are like that and then there are certain ones that are not.

CR 442: Excerpt of Contested Case Hearing Transcript, p. 73, lns. 12-19 (emphasis added).

Dr. Ivanhoe's testimony, both before and after the affidavit, is directly contradictory to the conclusion made in the affidavit and relied upon by Chamul. This is not a situation of human inaccuracy or a matter of degrees.

There is no explanation offered in Dr. Ivanhoe's affidavit for her change of position. Rather, at her deposition, Dr. Ivanhoe was specifically asked if her opinion altered from her testimony at the November, 2011 contested case hearing. Dr. Ivanhoe stated that her opinion had not changed. CR 131: Dr. Ivanhoe's Deposition, p. 27, lns. 19-24. Chamul's brief acknowledges that he lost at the administrative contested case hearing precisely on the issue of Claimant's mental

age range. APPELLANT'S BRIEF, p. 14. It appears that the affidavit was procured from Dr. Ivanhoe by Chamul solely to create a fact issue as her testimony at the administrative level and in her deposition fails to provide the expert testimony necessary for Chamul to meet the definition of imbecility used before the DWC and applied by the trial court.

### III. The trial court correctly granted summary judgment in favor of Amerisure.

**A. Standard of Review**

A trial court's summary judgment is subject to de novo review. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (internal citations omitted). Further, "[t]he reviewing court should render the judgment that the trial court should have rendered." *Id.* (internal citations omitted).

Nevertheless, each party moving for summary judgment has the burden of showing that no genuine issue of material facts exists and that the party is entitled to summary judgment as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).This court may "affirm the trial court's summary judgment,

reverse and render judgment for the other party if appropriate, or reverse and remand if neither party has met its summary judgment burden." *Amer. Home Assur. Co. v. De Los Santos*, 2012 Tex. App. Lexis 789, 4-5 (Tex. App.—San Antonio 2012, pet. filed) .

**B. Amerisure was entitled to summary judgment.**

The trial court correctly granted summary judgment in favor of Amerisure. Chamul failed to present competent summary judgment evidence proving that he met the definition of imbecility. Amerisure was entitled to summary judgment as a matter of law. The definition of imbecility applied by the trial court was not a surprise to Chamul. He was aware of the definition of imbecility that the Court adopted in this case. It is the same definition that was used during the administrative proceedings in this case. Chamul was unable to present evidence meeting this definition because he cannot meet this definition. The summary judgment evidence only supports this conclusion. Notably, Chamul refers vaguely to the overwhelming evidence supporting his assertion of imbecility, but fails to identify any summary judgment evidence that falls within the definition of imbecility applied by the trial court.

There is no question in this case that Chamul does not suffer from incurable imbecility to entitle him to lifetime income benefits. Chamul acknowledged that Dr. Stanley Hite was appointed by the DWC as the designated doctor to examine

Chamul. CR 27. The designated doctor is an impartial doctor appointed by the DWC to render an opinion regarding a workers' compensation Claimant's injury. TEX. LAB. CODE § 408.0041. Dr. Hite's report was unequivocal that Chamul was not an imbecile:

> Extent: I was asked to determine the degree of his traumatic brain injury and whether it resulted in incurable insanity or imbecility. He does not have symptoms of a psychotic disorder such as delusions, hallucinations, disorganized speech, incoherence, or grossly disorganized or catatonic behavior.
>
> According to Texas Courts, imbecility, means mentally deficient person, especially a feeble minded person, having a mental age of three to seven years, and requiring supervision of performance of routine daily tasks or caring for himself. **I do not believe that the examinee fits the definition of being an imbecile.** His father believes that he is functioning at, or most likely that of a 11-year old. I would tend to agree with that assessment.

CR 125-26 (emphasis added).

Similarly, Chamul's treating physician also testified that Chamul functions at a higher level than that of incurable imbecility.

> Q: So in terms of the totality, though, of everything that you know during your years of treating Mr. Chamul, is his entire person – **does he behave at an age of a 3 – to – 7 year old?**
> A: **No.**

CR 130: Dr. Ivanhoe's Deposition, p. 24, Ins. 18-22 (emphasis added).

> Q: **But as it pertains to the totality of his personality and his functional ability, it is greater than that of a 7-year-old, isn't it?**
> A: **In many ways, yes.**

CR 131: Dr. Ivanhoe's Deposition, p. 27, Ins. 4-7 (emphasis added).

**Q: Dr. Hite felt that Mr. Chamul was functioning at or most likely at – of that of a 11-to-12 years old. Do you agree with that?**
A: I'm much more comfortable with 11-to-12 year-old, **yes.**

CR 134: Dr. Ivanhoe's Deposition, p. 57, Ins. 5-10 (emphasis added).

Q: An in regards to your testimony in November of 2011, would you agree with me if it reflects that **you did not believe he met the definition of mental retardation** after his injury, is that an opinion that you still hold to?
A: **Yes.**

CR 131: Dr. Ivanhoe's Deposition, p. 27, Ins. 19-24 (emphasis added).

Chamul's treating physician, Dr. Ivanhoe, also acknowledged that Chamul's condition continues to improve and that he could perform some repetitive tasks in a workforce:

Q: Now, you have indicated in regards to the first paragraph of this report that his [Chamul's] awareness is much greater than it had been in the past. Why is it that you felt it necessary to memorialize that in your report?
A: Because we see that over time as patients are living with brain injuries in the community, and it also could potentially reflect upon the management of his medical complications from the injuries.
Q: So is that also a reflection, doctor, that Mr. Chamul is improving as it pertains to his awareness level?
A: I supposed you could say he's evolving.
Q: And in terms of also your representation that you believe – and it's at the very bottom of your report – that this patient would potentially be a candidate for some sort of sheltered employment long-term. So do you believe that this mental capacity is such now based on treating with you for, gosh, over – at least over three years or four years that his condition is improving now that you believe he's capable of joining some type of sheltered employment or workforce?
A: **Yes, I believe in a supervised setting that he is capable to do something repetitive. Yes.**

CR 132: Dr. Ivanhoe's Deposition, p. 34, In. 5 to p. 35, In. 2, (emphasis added).

Even Chamul's retained expert, Wallace Stanfill, includes in his affidavit that Mr. Chamul operated above that of a three to seven year old child. CR 81. Additionally, previous intellectual and cognitive functioning testing of Chamul showed a "Full Scale IQ of 82." CR 135. Chamul's academic skills were classified "within the low-average range." CR 136.

Amerisure's retained neuropsychiatrist, Dr. Andrew Brylowski examined the Chamul pursuant to the previous order from the Court. CR 392. Dr. Brylowski was asked to directly address whether Chamul meets the definition of imbecility:

> In reasonable medical probability, the Claimant does not meet criteria for imbecility or incurable insanity. He did have a significant traumatic brain injury and has improved with time. Above examination is consistent with somebody who is uncooperative, consistently remembers to tell me that he does not know or forgets which is inconsistent with a feeble-minded person having a significant traumatic brain injury. . . .
>
> Determination: Based on the above examination, it is this examiner's opinion that the Claimant did not sustain any type of irreversible brain injury which would rise to the level of rendering him permanently unemployable because of eliminating his ability to engage in a range of usual cognitive processes. The Claimant is very sociable with his father, the interpreter, the Court reporter and this examiner. He understood that a Judge had ordered the examination, he waited patiently for approximately, 2-3 hours not doing neuropsychiatric measures without being disruptive, and consistently remembered why he could not do them. He was able to volunteer at a food bank and is described as very successful at this, seeking out more work.
>
> Overall, any cognitive, conative, neuroendocrine, sensory and motor function, or brainstem/cranial nerve function can be treated and managed to help the Claimant reintegrate into the workforce. He does not, in reasonable medical probability, meet the definition of incurable insanity or imbecility as defined above and as discussed in this determination.

23

CR 415-17.

Dr. Brylowski testified that Chamul consistently gave evasive answers to questions during his examination stating he didn't remember or didn't know answers to questions, indicating a continued awareness and focus in refusing to participate in the examination. CR 383: p. 26, ln. 3 to p. 28, ln. 12. Even when Chamul refused to complete examination documents he did not become disruptive, agitated, or move around. CR 384: p. 30, ln. 2, to p. 31, ln.20. Rather, he was aware of the circumstances and chose to sit patiently. *Id.* Additionally, Chamul displayed selective memory when completing another portion of the examination. *Id.*, p. 30, ln. 21 to p. 34, ln. 7. Chamul repeatedly demonstrated memory, intellectual ability, and focus necessary to avoid participation in the examination. Chamul did not give irrational or jumbled answers during the examination, but rather there is a clear pattern of thought and execution in his refusal to fully participate.

Dr. Brylowski also testified that Chamul did not meet the definition of imbecility:

> Q: Doctor, you were asked for purposes of a question that's going to be asked to – of the jury to answer is whether Mr. Chamul meets the definition of imbecile, which is defined as a mentally deficient person, especially a feeble-minded person having a mental age of 3 to 7 years and requiring supervision in the performance of routine, daily tasks or caring for himself.
> A: Yes, ma'am. I believe so.

24

Q:  And do you have an opinion as to whether or not Mr. Chamul meets the definition of being an imbecile?
A:  Yes, ma'am.

Q:  And what is that opinion?
A:  My opinion is that Mr. Chamul does not meet the definition, the legal definition – this is not my professional definition – of an imbecile.

Q:  Any why is that?
A:  **Because he's functioning at a level mentally, emotionally, physically that would  be somebody in their teens or early 20s.**

Q:  And Doctor, another definition that may be offered to the jury in this respect is    whether Mr. Chamul is suffering from an irreversible brain injury, which renders him permanently unemployable, and so affects the nonvocational quality of his life by    eliminating his ability to engage in a range of usual cognitive processes.  Were you asked to address that issue?
A:  I believe so, yes, ma'am.

Q:  And do you have an opinion in regards to that question?
A:  Yes, ma'am.

Q:  And what is that sir?
A:  Well, my first opinion is that that's a lot to expect from people who aren't familiar with this field to have to think about.  From my point of view as a professional, he does not meet the definition that you describe there.

Q:  And why is that sir,?
A:  Because there –  he's able to dress himself, walk, talk, remember to underperform on various formal testing.  He's able to laugh, interact, communicate, sit patiently for a couple of hours, consistently do things over and over and over.  So, for example, he could consistently do some sort of assembly or manufacturing job where he could do a couple of different tasks over and over once you're trained, the sort of thing.

CR 391: p. 60, ln. 1 to p. 61, ln. 2.

There was no genuine issue of material fact in this case as to whether

Chamul met the definition of imbecility applied throughout this case, both when

the case was pending administratively before the DWC and before the trial court. There is no explanation in Chamul's brief as to how he meets the definition of imbecility applied by the trial court. Chamul fails to even address this issue. The main focus of Chamul's argument on appeal regarding the definition of imbecility stems from the fact that Chamul was unable to produce competent summary judgment evidence meeting the requirements to prove imbecility. This is why Chamul lost this case at the administrative contested case hearing, before the administrative Appeals Panel, and on summary judgment at the trial court.

Additionally, the summary judgment evidence cited herein shows that Chamul is not entitled to summary judgment as a matter of law. Even if the Court were to adopt one of the various definitions or tests for imbecility set forth by Chamul then he would still not be entitled to judgment rendered as a matter of law. Amerisure presented summary judgment evidence showing that Chamul does not meet the standard of imbecility for entitlement to lifetime income benefits pursuant to Texas Labor Code § 408.161(a)(6).

## C.     Entitlement to Attorneys' Fees.

Chamul's brief states in its introduction that in the event that the Court were to render judgment for the Appellant the case would have to be remanded for an award of attorneys' fees. No explanation is provided for this statement. Chamul is not entitled to the recovery of attorneys' fees regardless of the outcome of this

case. It is well settled under Texas law that a party may not recover attorneys' fees unless authorized by statute or contract. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002); *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). Chamul fails to identify any statute allowing him to recover attorneys' fees in this case.

Under Texas Labor Code § 408.221(c) only an insurance carrier "that seeks judicial review" may be liable for attorneys' fees. However, the insurance carrier (Amerisure) prevailed administratively and did not seek judicial review. Chamul sought judicial review and is therefore not entitled to the recovery of any attorneys' fees.

## **CONCLUSION**

The trial court applied the correct definition of imbecility in considering the parties' cross motions for summary judgment. The definition adopted by the trial court was the only definition supported by Texas case law and the definition used while the case was pending before the DWC. The definition of imbecility used by the trial court also reflects the common and technical usage of the word.

In asking the Court to reject the definition of imbecility applied by the trial court Chamul fails to articulate a cohesive alternative standard to be applied in determining imbecility. Chamul asserts multiple definitions and a multifactored test, new or substantially different than the definitions and factors presented by

27

Chamul to the trial court. Chamul cannot allege new arguments on appeal to defeat summary judgment.

## PRAYER

Amerisure respectfully requests that the Court affirm the trial court's judgment. In the event the court overturns the summary judgment in favor in favor of Amerisure, Amerisure alternatively requests that the Court reverse and remand the case for a further determination regarding Chamul's entitlement to lifetime income benefits. In either event, Amerisure requests the Court affirm the denial of Chamul's entitlement to attorneys' fees. Amerisure further requests such further relief it may be entitled to in law or in equity.

Respectfully submitted,

By: */s/ Joy M. Brennan*
SMITH & CARR, P.C.
Dana M. Gannon
State Bar No. 07623800
dgannon@smithcarr.com
Joy M. Brennan
State Bar No. 24040569
jbrennan@smithcarr.com
9235 Katy Freeway, Suite
Houston, Texas 77024
Telephone: (713) 933-6700
Facsimile: (713) 933-6799
ATTORNEYS FOR APPELLEE,
AMERISURE MUTUAL INSURANCE CO.

28

## CERTIFICATE OF COMPLIANCE

I certify that as counsel for Appellee that the number of words in this document is 6,905 as calculated by Microsoft Word.

*/s/ Joy M. Brennan*
Joy M. Brennan

## CERTIFICATE OF SERVICE

A true and correct copy of this Motion has been forwarded via E-Service to all counsel of record on April 23, 2015, as follows:

Brad McClellan
Law Offices of Richard Pena, P.C.
1701 Directors Blvd., Suite 110
Austin, Texas 78744                    ***Via E-Service***

Larry Trimble
Trimble & Grantham
902 Heights Blvd.
Houston, Texas 77008                   ***Via E-Service***

*/s/ Joy M. Brennan*
Joy M. Brennan